EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GERALD A. ENGLER
Senior Assistant Attorney General
PEGGY S. RUFFRA
Supervising Deputy Attorney General
JILL M. THAYER, State Bar No. 166428
Deputy Attorney General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 703-5954
  Fax:  (415) 703-1234
  Email:  Jill.Thayer@doj.ca.gov

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| **VANCE RIDER,** | C 08-0235 RMW (PR) |
| Petitioner, | **ANSWER TO ORDER TO SHOW CAUSE** |
| v. | |
| **BEN CURRY, Warden,** | |
| Respondent. | |

        Respondent hereby provides this answer to the order to show cause why the petition

for writ of habeas corpus should not be granted:

### CUSTODY

        Petitioner is lawfully in the custody of Ben Curry, Warden of the California Correctional

Training Facility in Soledad, California, as the result of a conviction in San Mateo County Superior

Court case number SC047362.  A jury found petitioner guilty of failure to register as a sex offender

(Cal. Pen. Code § 290).  After finding petitioner had five prior strike convictions (Cal. Pen. Code

§§ 667(a)-(i) & 1170.12), the trial court sentenced him to state prison for 25 years to life.

1

## GENERAL AND SPECIFIC DENIALS

Respondent denies that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Respondent specifically denies that petitioner was denied his rights to due process, to present a defense, or to jury trial, or that his sentence constitutes cruel and unusual punishment.

## PROCEDURAL ISSUES

Petitioner exhausted his claims in state court. His petition is timely.

## LODGED DOCUMENTS

Respondent has lodged concurrently with this answer the following exhibits: (1) the state court Clerk's Transcript; (2) the state court Reporter's Transcript; (3) Appellant's Opening Brief; (4) Respondent's Motion to Augment the Appellate Record; (5) Order Granting Respondent's Motion to Augment Record; (6) Respondent's Brief; (7) Appellant's Reply Brief; (8) unpublished opinion of the California Court of Appeal, First Appellate District, Division Four, filed September 17, 2003; (9) Petition for Rehearing; (10) Denial of Petition for Rehearing; (11) Petition for Review; (12) Order Granting Petition for Review; (13) Order Transferring Matter to California Court of Appeal; (14) Appellant's Brief on Remand; (15) Appellant's Application for Augmentation of Record; (16) Order Granting Application for Augmentation of Record; (17) unpublished opinion of the California Court of Appeal, First Appellate District, Division Four, filed December 9, 2005; (18) Petition for Rehearing; (19) Denial of Petition for Rehearing; (20) Petition for Review; (21) Answer to Petition for Review; (22) Order Granting Review and Transferring Matter to California Court of Appeal; (23) unpublished opinion of the California Court of Appeal, First Appellate District, Division Four, filed June 28, 2006; (24) Petition for Review; (25) Denial of Petition for Review. Respondent hereby incorporates by reference the accompanying memorandum of points and authorities in support of this answer.

1

**CONCLUSION**

2          Accordingly, respondent respectfully requests this Court to deny the petition for writ of

3    habeas corpus.

4          Dated:  August 15, 2008

5                              Respectfully submitted,

6                              EDMUND G. BROWN JR.
                             Attorney General of the State of California

7                              DANE R. GILLETTE
                             Chief Assistant Attorney General

8
                             GERALD A. ENGLER
9                              Senior Assistant Attorney General

                             PEGGY S. RUFFRA
10                             Supervising Deputy Attorney General

11

12                             /s/ Jill M. Thayer_____
                             JILL M. THAYER
13                             Deputy Attorney General
                             Attorneys for Respondent

14

15     20125770.wpd

16     SF2008401602

17

18

19

20

21

22

23

24

25

26

27

28

Answer to Order to Show Cause                                          *Rider v. Curry, Warden*
                                                                    C 08-0235 RMW (PR)

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **Rider v. Curry, Warden**

No.:    **C 08-0235 RMW (PR)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter.  I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service.  In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On <u>August 15, 2008</u>, I served the attached

**ANSWER TO ORDER TO SHOW CAUSE**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA  94102-7004, addressed as follows:

Vance Rider
T 44920
California Correctional Training Facility
P.O. Box 689
Soledad, CA 93960

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on August 15, 2008, at San Francisco, California.

| M. Argarin | /s/ M. Argarin |
|---|---|
| Declarant | Signature |

20131767.wpd

1 EDMUND G. BROWN JR.
Attorney General of the State of California
2 DANE R. GILLETTE
Chief Assistant Attorney General
3 GERALD A. ENGLER
Senior Assistant Attorney General
4 PEGGY S. RUFFRA
Supervising Deputy Attorney General
5 JILL M. THAYER, State Bar No. 166428
Deputy Attorney General
6  455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
7  Telephone:  (415) 703-5954
 Fax:  (415) 703-1234
8  Email:  Jill.Thayer@doj.ca.gov

9 Attorneys for Respondent

10                  IN THE UNITED STATES DISTRICT COURT

11              FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                           SAN JOSE DIVISION

13
   **VANCE RIDER,**                          C 08-0235 RMW (PR)
14
                                  Petitioner,
15
            **v.**
16
   **BEN CURRY, Warden,**
17
                                 Respondent.
18

19
       **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER**
20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

Page

3    STATEMENT OF THE CASE    1

4    STATEMENT OF FACTS    2

5    ARGUMENT    3

6    I.    **STANDARD OF REVIEW**    3

7    II.    **THE STATE COURT DID NOT UNREASONABLY APPLY
          SUPREME COURT AUTHORITY IN DETERMINING THAT**

8          **THE TRIAL COURT'S RULING EXCLUDING EXPERT
          TESTIMONY REGARDING PETITIONER'S LIMITED**

9          **INTELLIGENCE DID NOT VIOLATE PETITIONER'S RIGHT
          TO DUE PROCESS**    3

10

11   III.   **THE STATE COURT'S DETERMINATION THAT THE TRIAL
          COURT'S FINAL RESPONSE TO THE JURY'S QUESTIONS
          DID NOT DIRECT A VERDICT OR CREATE AN**

12         **IMPERMISSIBLE MANDATORY PRESUMPTION IS NOT
          CONTRARY TO SUPREME COURT AUTHORITY**    13

13

14   IV.    **THE STATE COURT'S DETERMINATION THAT THE
          CHALLENGED INSTRUCTIONS WERE NOT ERRONEOUS IS**

15         **NOT CONTRARY TO OR AN UNREASONABLE
          APPLICATION OF SUPREME COURT PRECEDENT**    14

16   V.     **THE STATE COURT'S RULING THAT PETITIONER'S
          SENTENCE DOES NOT CONSTITUTE CRUEL AND UNUSUAL**

17         **PUNISHMENT IS NOT AN UNREASONABLE APPLICATION
          OF SUPREME COURT AUTHORITY**    17

18   CONCLUSION    20

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4     *Bradshaw v. Richey*
      546 U.S. 74 (2005)                                               10
5
      *California v. Trombetta*
6     467 U.S. 479 (1984)                                               4

7     *Chambers v. Mississippi*
      410 U.S. 284 (1973)                                               4
8
      *Clark v. Arizona*
9     548 U.S. 735 (2006)                                          4, 10, 11

10    *Estelle v. McGuire*
      502 U.S. 62 (1991)                                           4, 9, 14
11
      *Ewing v. California*
12    538 U.S. 11 (2003)                                               18

13    *Fry v. Pliler*
      127 S.Ct. 2321 (2007)                                            12
14
      *Holmes v. South Carolina*
15    547 U.S. 319 (2006)                                          4, 9, 12

16    *Lockyer v. Andrade*
      538 U.S. 63 (2003)                                               17
17
      *Michigan v. Lucas*
18    500 U.S. 145 (1991)                                               4

19    *People v. Garcia*
      25 Cal.4th 744 (2001)                                            14
20
      *People v. Johnson*
21    67 Cal.App.4th 67 (1998)                                         17

22    *People v. Sorden*
      36 Cal.4th 65 (2005)                                          10, 14
23
      *People v.Barker*
24    34 Cal.4th 345 (2004)                                        10, 14, 16

25    *Richter v. Hickman*
      521 F.3d 1222 (9th Cir. 2008)                                    13
26
      *Rummel v. Estelle*
27    445 U.S. 263 (1980)                                          17, 18

28

**TABLE OF AUTHORITIES**  (continued)

1

Page

2

*Stanton v. Benzler*
3   146 F.3d 726 (9th Cir. 1998)                                                    10

4   *United States v. Rubio-Topete*
    999 F.3d 1334 (9th Cir. 1993)                                                  11

5   *United States v. Scheffer*
6   523 U.S. 303 (1998)                                                             4

7   *Williams v. Taylor*
    529 U.S. 362 (2000)                                                             3

8   *Woodford v. Visciotti*
9   537 U.S. 19 (2002)                                                              3

10  *Woods v. Alaska*
    957 F.2d 1544 (9th Cir. 1992)                                                   4

11

**Statutes**

12

13  California Penal Code
        § 28                                                                       10
14      § 29                                                                       10
        § 290                                                        1, 10, 13, 14, 17
15      § 290(g)(2)                                                                15
        § 667.5(b)                                                                  1
16      § 1170.12                                                                   1

17  United States Code, Title 28
        § 2254(d)(1)                                                                3

18

**Other Authorities**

19

20  Antiterrorism and Effective Death Penalty Act of 1996                          3

21  California Jury Instructions, Criminal
        No. 1.20                                                                   15
22      No. 1.21                                                                   15
        No. 3.30                                                                   15

23

24

25

26

27

28

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  JILL M. THAYER, State Bar No. 166428
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5954
    Fax:  (415) 703-1234
8   Email:  Jill.Thayer@doj.ca.gov

9  Attorneys for Respondent

10         IN THE UNITED STATES DISTRICT COURT

11       FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                 SAN JOSE DIVISION

13

14  **VANCE RIDER,**                          C 08-0235 RMW (PR)

                                   Petitioner,   **MEMORANDUM OF POINTS**
15                                              **AND AUTHORITIES IN**
                                                **SUPPORT OF ANSWER**
16       **v.**

    **BEN CURRY, Warden,**
17
                                   Respondent.
18

19

20              **STATEMENT OF THE CASE**

21         On August 14, 2001, a jury found petitioner guilty of failing to register as a sex offender

22  (Cal. Pen. Code § 290).  Ex. 1A at 261.  On August 15, 2001, the court found that petitioner had five

23  prior strike convictions (Cal. Pen. Code § 1170.12) and had served two prior prison terms (Cal. Pen.

24  Code § 667.5(b)).  Ex. 1A at 267-68; Ex. 2G at 269-270.  On February 21, 2002, the court sentenced

25  petitioner to 25 years to life.  Ex. 1A at 309.

26         On September 17, 2003, the California Court of Appeal affirmed the judgment in an

27  unpublished opinion.  Ex. 8.  The California Supreme Court granted a petition for review, deferred

28  further action pending a decision in another case, and then transferred the matter back to the

California Court of Appeal.  Exs. 12 & 13.  On December 9, 2005, the California Court of Appeal affirmed the judgment in an unpublished opinion.  Ex. 17.  The California Supreme Court granted review and transferred the matter back to the California Court of Appeal with directions to vacate its opinion.  Ex. 22.  On June 28, 2006, the California Court of Appeal affirmed the judgment in an unpublished opinion.  Ex. 23.  The California Supreme Court denied review on October 18, 2006. Ex. 25.

## STATEMENT OF FACTS

The California Court of Appeal summarized the facts of the case as follows:

Defendant stipulated that he "has been previously convicted of a felony sexual offense that requires him to register as a sex offender, pursuant to Penal Code section 290."  People's exhibit No. 6—which was admitted in evidence and a copy of which is in the record on appeal—consists of a number of defendant's registrations with various law enforcement agencies dating from 1994.  On several of the forms for change of address defendant put down "transient" for his new address.  The last registration from defendant was in January of 1999, giving an address in Oakland.  In March of 2000, police discovered defendant in a National Guard armory in San Mateo, which was used as a shelter for the homeless.  Only allowed to stay in the armory at nights, defendant had begun sleeping there in November of 1999.

The forms comprising People's exhibit No. 6 show defendant's birthday as January 4.  The January 1999 registration contains defendant's certification under penalty of perjury as follows: "I have been notified of my duty to register as a convicted sex offender under PC §§ 290 . . . .  I have read, understood, and initialed each requirement listed below:  [¶] . . . [¶] Upon coming into, or when changing my residence or location within, any city, county, or city and county in which I am residing or located, I must register with the law enforcement agency having jurisdiction over my residence or location . . . as a sex offender, within five (5) working days.  [¶] . . . [¶] Every year within five (5) working days of my birthday, I must update my address, name, and vehicle information with the registering agency."

One of the two officers who met defendant at the armory testified that a radio check returned the information that defendant "may not be in compliance" with his registration requirements.  When asked when he had last registered, defendant replied "[O]n my birthday" in "January of 1999."  Defendant told the officer he had last registered in Oakland, but he was "no longer living there." When asked for the card all sex offender registrants are required to carry,[1] defendant told the officers it had been mailed to his mother's house;  upon checking his wallet defendant produced an expired registration card.  Records

---

1. During his closing argument the prosecutor described the card as follows: "[O]n the back of this card are the sex registration requirements, within five days of moving into the city, five days of your birthday.  There it is in black and white . . . .  [D]efendant is carrying this with him on a daily basis."

of the Oakland Police Department showed that defendant had not registered in that city since January of 1999. The San Mateo Police Department had no record of defendant registering between November of 1999 and March of 2000.

Ex. 23 at 2-3, footnote in original.

## ARGUMENT

## I.

## STANDARD OF REVIEW

Federal habeas corpus review of a state judgment is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under the AEDPA, the federal court has no authority to grant habeas relief unless the state court's ruling was "contrary to, or involved an unreasonable application of," clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). A state court's decision is "contrary to" law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or reaches a different conclusion based on facts materially indistinguishable from a Supreme Court case. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court's decision constitutes an "unreasonable application" of Supreme Court precedent if the state court identifies the correct governing legal principles, but the application of law to the facts is not merely erroneous but objectively unreasonable. *Id.* at 411-13. The AEDPA imposes a "highly deferential" standard for evaluating state court rulings and "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). In conducting habeas review, federal courts presume "that state courts know and follow the law." Id.

## II.

## THE STATE COURT DID NOT UNREASONABLY APPLY SUPREME COURT AUTHORITY IN DETERMINING THAT THE TRIAL COURT'S RULING EXCLUDING EXPERT TESTIMONY REGARDING PETITIONER'S LIMITED INTELLIGENCE DID NOT VIOLATE PETITIONER'S RIGHT TO DUE PROCESS

Petitioner contends the trial court's ruling excluding expert testimony regarding his limited intelligence and ability to remember denied him his rights to due process, to present a defense, to call witnesses and to a jury trial. Pet. at 4, 18-50. The state court's ruling was not contrary to or an unreasonable application of Supreme Court authority.

A federal habeas court does not "reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.*

The due process clause requires "that criminal defendants be afforded a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984); *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). A defendant has no right to present irrelevant evidence, however, and even relevant evidence may be excluded in certain circumstances. *Woods v. Alaska*, 957 F.2d 1544, 1549 (9th Cir. 1992). The right to introduce relevant evidence can be curtailed when the reasons for doing so "are good enough to satisfy the standard of fundamental fairness that due process requires." *Clark v. Arizona*, 548 U.S. 735, 770-71 (2006); *Holmes v. South Carolina*, 547 U.S. 319, 326-27 (2006); *Michigan v. Lucas*, 500 U.S. 145, 149 (1991). Thus, a state's rules excluding evidence from criminal trials do not violate due process as long as they are not arbitrary or disproportionate to the purposes they are designed to serve. *United States v. Scheffer*, 523 U.S. 303, 308 (1998). Moreover, the exclusion of evidence is "unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." *Id.* A rule is arbitrary where it excludes important defense evidence but does not serve any legitimate interests. *Holmes*, 547 U.S. at 325.

Excluding evidence that a defendant has a mental disease and lacks the capacity to form mens rea does not violate due process. *Clark v. Arizona*, 548 U.S. at 770-71. In *Clark*, the trial court's ruling that evidence of the defendant's paranoid schizophrenia was admissible solely to prove the defendant's affirmative defense of insanity, but was inadmissible to rebut the prosecution's evidence of mens rea, did not violate due process. *Id.* at 778. A state's exclusion of expert testimony on mental disease and incapacity on the issue of mens rea does not violate due process where the state "has a good reason for confining the consideration of evidence of mental disease and incapacity to the insanity defense." *Id.* at 772. "[I]f a jury were free to decide how much evidence of mental disease and incapacity was enough to counter evidence of *mens rea* to the point of creating a reasonable doubt, that would in functional terms be analogous to allowing jurors

1   to decide upon some degree of diminished capacity to obey the law, a degree set by them, that would

2   prevail as a stand-alone defense." *Id*. at 773. The controversial character of some categories of

3   mental disease, the potential for mental disease evidence to mislead, and the danger of according

4   greater certainty to capacity evidence than experts claim for it justify a state's decision to preclude

5   evidence of a defendant's mental disease and incapacity from consideration on the issue of mens rea.

6   *Id.* at 774. "There are, finally, particular risks inherent in the opinions of the experts who

7   supplement the mental-disease classifications with opinions on incapacity: on whether the mental

8   disease rendered a particular defendant incapable of the cognition necessary for moral judgment or

9   *mens rea* or otherwise incapable of understanding the wrongfulness of the conduct charged. Unlike

10  observational evidence bearing on *mens rea,* capacity evidence consists of judgment, and judgment

11  fraught with multiple perils: a defendant's state of mind at the crucial moment can be elusive no

12  matter how conscientious the enquiry, and the law's categories that set the terms of the capacity

13  judgment are not the categories of psychology that govern the expert's professional thinking." *Id.*

14  at 776-77. Accordingly, limiting evidence of a defendant's mental disease or incapacity does not

15  violate due process.

16       The California Court of Appeal summarized the circumstances of the trial court's ruling

17  excluding the expert testimony as follows:

18       Defendant did not testify or call witnesses on his behalf. At the start of
    trial he indicated that he would call Dr. William Lynch to testify for him. The
19  prosecution asked for an offer of proof in order to establish the scope of
    Lynch's testimony "because issues related to mental defect, mental illness . . .
20  under [California] Penal Code Section 28, are not admissible. There are very
    significant confines on how that sort of testimony can be used in cases such as
21  this, a general intent crime, and I believe [defense counsel] may be trying to use
    a psychologist to introduce evidence that is not admissible pursuant to Penal
22  Code Section 28 . . . ." Defense counsel responded: "I've given [the] people a
    13-page report which indicates my client's I.Q., his memory problems, and
23  brain damage. That's what I would have Dr. Lynch testify about. It goes to
    whether there was a willful violation of Penal Code section 290. [¶] The
24  California Supreme Court's most recent case of Garcia [*People v. Garcia*
    (2001) 25 Cal.4th 744] states the word 'willfully' implies purpose . . . and a
25  person's intention, I think their ability for memory and recall, and brain damage
    that they have suffered, can go directly to that issue."

26

27       At the hearing conducted pursuant to [California] Evidence Code section
    402 at the prosecution's request, psychologist Dr. William Lynch testified that
    he is chief of the brain injury rehabilitation unit at a Veterans Administration
28  hospital. He examined defendant and determined that he has an I.Q. of 69,

"which is designated extremely low, . . . the lowest rating of an I.Q. score . . . . [¶] . . . his score was lower than 98 percent of the population." For a person with such a score "there will be difficulty with memory, planning, problem-solving, the kinds of things that generally require more sophisticated brain functioning and overall intellectual sophistication. A person can carry on their everyday life, but what they tend not to do is project very far into the future in terms of planning, they tend not to anticipate multiple consequences of their actions . . . ." Such a person can follow simple instructions "if . . . stated very clearly" and remember dates "if the date is extremely significant, possibly, but I think there's a tendency to be casual about the specificity of dates and to possibly confuse them, because one of the problems you have as the I.Q. score dips that low is in keeping things in proper sequence as you may remember some details but you might remember them out of the actual order." The passage of time would result in "loss . . . or distortion" of an instruction to do some act in the future. Lynch tested defendant's memory and found it to be "on the same scale," that is "he tended to lose information over time."

On cross-examination, Dr. Lynch testified that defendant had no trouble recalling his birthday, but was not otherwise "a good historian" of events in his life. Asked about the registration requirements recited on the forms in People's exhibit No. 6, Dr. Lynch testified that defendant could follow such instructions "If the information was given to him in writing, somebody sat down with him, went over it, under the circumstance[s] of that, but I think an instruction that's given to him once and verbally would be at great risk of being forgotten or distorted or misunderstood, based on what I found."

After hearing argument from the parties, the court granted the prosecution's "motion in limine to exclude the testimony of Dr. Lynch" because "it appears that his testimony relates to an alleged mental defect," a subject prohibited by section 28.

At the close of the prosecution's case-in-chief, defendant's counsel asked the court to reconsider its ruling precluding Dr. Lynch from testifying. The court declined to change its ruling. The defense rested without calling any witnesses or presenting any evidence.

Ex. 23 at 3-5.

The California Court of Appeal determined the exclusion of Dr. Lynch's testimony did

not violate petitioner's constitutional rights, reasoning as follows:

The basis for the trial court's ruling was that the testimony was not permitted by [California Penal Code] section 28, which provides in pertinent part: "(a) Evidence of mental disease, mental defect, or mental disorder shall not be admitted to show or negate the capacity to form any mental state, including, but not limited to, purpose, intent, knowledge, premeditation, deliberation, or malice aforethought, with which the accused committed the act. Evidence of mental disease, mental defect, or mental disorder is admissible solely on the issue of whether or not the accused actually formed a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged. [¶] (b) As a matter of public policy there shall be no defense of diminished capacity, diminished responsibility, or irresistible impulse in a criminal action . . . ." Also relevant is [California Penal Code] section 29, which provides: "In the guilt phase of a criminal action, any

1    expert testifying about a defendant's mental illness, mental disorder, or mental
2    defect shall not testify as to whether the defendant had or did not have the
     required mental states, which include, but are not limited to, purpose, intent,
3    knowledge, or malice aforethought, for the crimes charged. The question as to
     whether the defendant had or did not have the required mental states shall be
4    decided by the trier of fact."  In operation these statutes mean that "Expert
     opinion on whether a defendant had the capacity to form a mental state that is
5    an element of a charged offense or actually did form such intent is not
     admissible at the guilt phase of a trial."  (*People v. Coddington* (2000) 23
     Cal.4th 529, 582.)

6

7         Although the matter is not completely free from doubt, we cannot conclude
     that the trial court erred in treating Dr. Lynch's proposed testimony as
8    proscribed by [California Penal Code] section 28.  A proper appreciation of the
     context establishes that the subject of Dr. Lynch's testimony was defendant's
9    "capacity to form any mental state," specifically "knowledge" within the
     meaning of section 28.  Dr. Lynch did not ask defendant about why he did not
10   register; when asked by the prosecutor, "Did you talk with the defendant at all
     about his obligations to register as a sex offender?" Dr. Lynch replied, "No."
11   Lynch tested defendant for his "overall intellectual ability." Dr. Lynch testified
     about the "parameter or functioning" possessed by persons with defendant's
12   I.Q., with particular attention to their ability to remember what they have been
     told. He concluded that defendant's memory "was consistent I think with what
13   you would have predicted from the I.Q. tests." He did, however, discover that
     defendant had no hesitation in remembering the date of his birth.  There is no
14   evidence that Dr. Lynch questioned defendant about why he did not register in
     either Alameda or San Mateo Counties for the 15-month period between
15   January 1999 and March 2000, and no indication that defendant himself raised
     the issue. In other words, there was no evidence that defendant had in fact failed
16   to register for more than a year due to his impaired memory functioning.  It thus
     appears that the general subject of Dr. Lynch's testimony was, in the abstract,
17   the memory capacity of persons with I.Q.'s comparable to defendant.  The
     testimony was consequently within the prohibitions against "[e]vidence . . . to
18   . . . negate the capacity to form any mental state, including . . . knowledge" (§
     28, subd. (a)) by an expert (§ 29)).

19        Although defendant views the ruling as denying him his right under the
     United States Constitution to present a defense, our Supreme Court has
20   concluded otherwise: "Sections 28 and 29 do not preclude offering as a defense
     the absence of a mental state that is an element of a charged offense or
21   presenting evidence in support of that defense. They preclude only expert
     opinion that the element was not present." (*People v. Coddington, supra*, 23
22   Cal.4th 529, 583.)  These statutes did not preclude defendant from testifying
     himself, nor presenting corroborating testimony by nonexperts, detailing any
23   previous incidents of forgetfulness, to attempt to establish that his failure to
     register was attributable to his inability to remember his obligation to register.
24   That did not occur.

25        In [*People v.*] *Barker* [34 Cal.4th 345 (2004)], our Supreme Court held that
     the willfulness element required for conviction under section 290 may not be
26   negated by evidence the defendant "just forgot" to register. (*People v. Barker,
     supra*, 34 Cal.4th 345, 358.)  At the same time, however, the court reserved
27   deciding "whether forgetfulness resulting from, for example, an acute
     psychological condition, or a chronic deficit of memory or intelligence might
28   negate the willfulness required for a section 290 violation." (*Ibid.*)  The issue

in *Sorden* was whether the defendant's depression qualified for this exemption. The court held it did not: "[T]he willfulness element of the offense may be negated by evidence that an involuntary condition—physical or mental, temporary or permanent—deprived a defendant of actual knowledge of his or her duty to register." (*People v. Sorden*, *supra*, 36 Cal.4th 65, 69 [2005].) The court decided the issue very narrowly, holding that only exceptional situations would suffice: "Only the most disabling of conditions, we emphasize, would qualify under the standard we announce today. Severe Alzheimer's disease is one example that comes to mind; general amnesia induced by severe trauma is another. Defendant's claimed depression clearly did not satisfy this standard. Defendant knew of his obligation to register and, had he taken it to heart, he could have managed to discharge it." (*Ibid.*)

"Defendant did not proffer such evidence. There is no question but that he knew of his duty to register. He simply claimed his depression made it more difficult for him to remember to register. However, life is difficult for everyone. As a society, we have become increasingly aware of how many of our fellow citizens must cope with significant physical and mental disabilities. But cope they do, as best they can, for cope they must. So, too, must defendant and other sex offenders learn to cope by taking the necessary measures to remind themselves to discharge their legally mandated registration requirements. It is simply not enough for a defendant to assert a selective impairment that conveniently affects his memory as to registering, but otherwise leaves him largely functional. [¶] . . . [¶]

"Just as it would effectively eviscerate the statute to permit sex offenders to escape the consequences of failing to register on the ground they simply forgot to do so [citing *Barker*], so, too, would it effectively eviscerate the statute to countenance as an excuse a condition that falls short of nullifying knowledge of one's registration obligations . . . .

"Finally, defendant contends it was for a jury, not the trial judge, to decide whether his depression deprived him of actual knowledge of his duty to register. We disagree. The question whether a defendant has proffered evidence sufficiently substantial to go to the jury under the standard we announce today is a question confided to the sound discretion of the trial court." (*People v. Sorden*, *supra*, 36 Cal.4th 65, 72-73.)

In a supplemental brief, defendant contends he can satisfy the *Barker-Sorden* standard on the basis of Dr. Lynch's testimony and additional written materials that were before the trial court prior to the point at which it imposed sentence. The written materials are Dr. Lynch's written report and a report from psychologist G. Patrick Farrell concerning whether defendant was competent to stand trial.

Granted, Dr. Lynch testified that defendant has an I.Q. of 69. But Dr. Farrell administered two tests, one of which fixed defendant's I.Q. at 94, the second at 74. Dr. Farrell also concluded that "Mr. Rider shows no signs of a disorder or any disturbance of thought such that mental illness would impair his ability to stand trial." Dr. Lynch's report includes multiple references to depression. There was no evidence defendant was ever institutionalized (not counting his prison commitments), and defendant told the probation officer he had lived on his own since 1974, when he was 16. In his written report, Dr. Lynch recorded that defendant had "mild neurocognitive impairment."

1      Dr. Lynch did not testify that defendant suffers from any organic disorder
or physical cause resulting in a diminution of his ability to remember. Dr.

2   Lynch did not testify that defendant is afflicted with a progressive or
degenerative disease that makes him increasingly unable to recall. In fact,

3   according to Dr. Lynch, defendant's memory is "actually pretty good" for some
things. At best, Lynch testified, defendant has "difficulty with memory,

4   planning, problem-solving, the kinds of things that generally require more
sophisticated brain functioning and overall intellectual sophistication," but

5   defendant has no problem remembering his birthday. Moreover, as Dr. Lynch
conceded, "It's hard to argue with the fact that he abided by them [the

6   registration requirements] up to a point."

7      This is the point that is virtually dispositive. People's Exhibit No. 6 shows
that defendant was able to comply with the registrations requirements for a

8   number of years. There is no evidence defendant personally claimed he did not
know of his obligation to register. On the contrary, he knew of it and offered

9   excuses to the probation officer: "I forgot to register on my birthday because I
was probably drunk . . . . This is the first and only time I have failed to

10   register." Defendant is therefore unable to claim that he suffers from a "chronic
deficit of memory or intelligence." (*People v. Barker*, *supra*, 34 Cal.4th 345,

11   358.) He is not afflicted by an "an involuntary condition so disabling as to rob
him of knowledge of his registration obligations under section 290." (*People v.*

12   *Sorden*, *supra*, 36 Cal.4th 65, 72.) Whatever the precise nature of defendant's
impairments, singly or collectively they do not meet the strict standard of "the

13   most disabling of conditions." (*Id.* at p. 69.) "Defendant knew of his obligation
to register and, had he taken it to heart, he could have managed to discharge it."

14   (*Ibid.*)

15      Finally, we note that the issue of whether defendant's mental situation
"deprived him of actual knowledge of his duty to register" was decided by the

16   trial court. *Sorden* establishes that this procedure was not error. (*People v.*
*Sorden*, *supra*, 36 Cal.4th 65, 73.) "The question whether a defendant has

17   proffered evidence sufficiently substantial to go to the jury . . . is a question
confided to the sound discretion of the trial court." (*Ibid.*) As did the court in

18   *Sorden*, we find no abuse of discretion for the reasons given.[2]

19   Ex. 23 at 8-13, footnote in original.

20      The only issue on federal habeas is whether the state court's ruling was contrary to or an

21   unreasonable application of Supreme Court authority on federal due process, not whether the state

22   court correctly interpreted California Penal Code sections 28 and 29. *Estelle v. McGuire*, 502 U.S.

23   at 67-68. Noting that Dr. Lynch never asked petitioner about his obligation to register, and that

24   petitioner never raised the issue, the state court concluded that the subject of Dr. Lynch's testimony

25   was limited to the mental capacity of people with I.Q.'s comparable to petitioner's. Ex. 23 at 9-10.

26   _____

27      2. *Holmes v. South Carolina* (2006) 547 U.S. 319 [126 S.Ct. 1727], cited by defendant in
a letter brief, does not alter this analysis or conclusion.

28

Memorandum of Points and Authorities in Support of Answer - *Rider v. Curry, Warden* - C 08-0235 RMW (PR)

1    The state court held that Dr. Lynch's testimony was properly excluded under California Penal Code

2    sections 28 and 29, and reasonably concluded that the exclusion did not violate petitioner's right to

3    present a defense. Ex. 23 at 10.   The state court observed that the "statutes did not preclude

4    defendant from testifying himself, nor presenting corroborating testimony by nonexperts, detailing

5    any previous incidents of forgetfulness, to attempt to establish that his failure to register was

6    attributable to his inability to remember his obligation to register." Ex. 23 at 10.

7        The state court's ruling was correct because the evidence was irrelevant.  Dr. Lynch's

8    testified that petitioner scored in the extremely low range on a test of "overall intellectual ability,"

9    that people with petitioner's I.Q. have problems with memory, planning, and following complex

10   instructions, and that petitioner's memory test was consistent with his I.Q. test, except that he was

11   good at remembering complicated designs.  Ex. 2G at 24-28.  Dr. Lynch never talked to petitioner

12   at all about his duty to register.  Ex. 2G at 35.  Dr. Lynch conceded that petitioner remembered his

13   birthday and had complied with the registration requirements numerous times. Ex. 2G at 35-38.

14       Under *Barker*, 34 Cal.4th at 359 and *Sorden*, 36 Cal.4th at 69, a violation of California

15   Penal Code section 290 requires only that the defendant had actual knowledge of the duty to register.

16   Forgetting to register does not negate actual knowledge.  *Barker*, 34 Cal. 4th at 361.  Only an

17   involuntary condition so disabling as to deprive a person of actual knowledge of his duty to register

18   may negate the willfulness element of California Penal Code section 290.  *Sorden*, 36 Cal.4th at 69.

19   A state determination regarding the elements of an offense is not open to challenge on federal habeas

20   review.  *Clark*, 548 U.S. at 752 (conceptualization of criminal offenses substantially open to state

21   choice); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law,

22   including one announced on direct appeal of the challenged conviction, binds a federal court sitting

23   in habeas corpus"); *Stanton v. Benzler*, 146 F.3d 726, 728 (9th Cir. 1998) (state law determination

24   that arsenic trioxide is a poison as a matter of law and thus not an element of the offense to be

25   decided by a jury is not open to challenge on federal habeas review).

26       As the trial court noted, Dr. Lynch did not testify "as to a complete failure to remember."

27   Ex. 2G at 34.  Nothing in Dr. Lynch's testimony regarding petitioner's alleged difficulty with

28   memory, planning, and following complex instructions suggested that petitioner lacked the actual

knowledge of his duty to register. Since the testimony was irrelevant, no constitutional error occurred in excluding it.

Even if the testimony were relevant, however, legitimate reasons for excluding it exist. The reasons the Supreme Court identified for excluding evidence of the defendant's paranoid schizophrenia in *Clark* apply directly to the present case. The Supreme Court identified the lack of consensus among experts, the potential for mental disease evidence to cause the factfinder to make unjustified conclusions, and the risk that the factfinder will give greater weight to the evidence than the expert even claims for it as legitimate reasons to exclude it. *Clark*, 548 U.S. at 774-78. The lack of consensus regarding a diagnosis occurred in the present case. While Dr. Lynch testified that petitioner had an I.Q. of 69, psychologist D. Patrick Farrell administered one test showing petitioner had an I.Q. of 94 and another indicating an I.Q. of 74. Ex. 23 at 11-12.

The evidence in the present case also had significant potential to mislead. Dr. Lynch gave petitioner tests to measure his "overall intellectual ability," but never addressed petitioner's actual knowledge of his registration requirements. While evidence of petitioner's low I.Q. may suggest he has limited knowledge, that inference may not be justified, particularly here, where petitioner registered numerous times and was carrying a registration card in his wallet the day he was found at the shelter. After all, a sex offender registrant need not be a genius to know he must register.

The present case also illustrates the danger of giving more weight to mental capacity evidence than the expert claims for it. Dr. Lynch's testimony related solely to the capacity of persons with petitioner's I.Q. to remember, plan, and follow complex instructions. Since Dr. Lynch did testify about petitioner's actual knowledge of his registration requirements, it is speculative to assert that his testimony is relevant on the issue of petitioner's actual knowledge. Mental capacity evidence, such as the testimony of Dr. Lynch, consists of judgment "fraught with multiple perils." *Clark*, 548 U.S. at 776. The exclusion of marginally relevant and highly speculative evidence does not violate due process. *United States v. Rubio-Topete*, 999 F.3d 1334, 1339-40 (9th Cir. 1993).

In addition, as the state court noted, petitioner was not prevented from introducing relevant evidence of his actual knowledge through his own testimony or the testimony of others. Ex. 23 at 9-10. Since the testimony was marginally relevant at best, legitimate reasons support its

1  exclusion, and petitioner was not prevented from introducing evidence of his lack of actual

2  knowledge through other means, the state court's conclusion was not unreasonable.

3  Finally, even if federal constitutional error occurred, it did not have a substantial and

4  injurious effect on the jury's verdict. "[I]n § 2254 proceedings a court must assess the prejudicial

5  impact of constitutional error in a state-court criminal trial under the 'substantial and injurious

6  effect' standard set forth in *Brecht* [*v. Abrahamson*], 507 U.S. 619 [1993], whether or not the state

7  appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond

8  a reasonable doubt' standard set forth in *Chapman*, 386 U.S. 18." *Fry v. Pliler*, 127 S.Ct. 2321,

9  2328 (2007).   Since the evidence demonstrated that petitioner had registered from 1994 to 1999,

10  and Dr. Lynch's testimony did not refute that petitioner had actual knowledge of his duty to register,

11  any error in excluding the testimony was harmless.

12  Petitioner's reliance on *Holmes v. South Carolina*, 547 U.S. 319 is misplaced, since that

13  case is distinguishable. Pet. at 47.  In *Holmes*, evidence that a third party committed the crime was

14  excluded under a rule excluding such evidence where the prosecution has introduced forensic

15  evidence that, if believed, strongly supports the defendant's guilt. *Id.* at 323-34.  Under the rule, the

16  trial judge does not evaluate the probative value or potential adverse effects of admitting the defense

17  evidence, but considers only the strength of the prosecution's case. *Id.* at 329.  Accordingly, the rule

18  does not serve the legitimate interest of focusing the trial "on the central issues by excluding

19  evidence that has only a very weak logical connection to the central issues." *Id.* at 330.  "The point

20  is that, by evaluating the strength of only one party's evidence, no logical conclusion can be reached

21  regarding the strength of contrary evidence offered by the other side to rebut or cast doubt." *Id.* at

22  331.

23  In the present case, the state courts evaluated the probative value of Dr. Lynch's evidence

24  in determining its exclusion was proper. Ex. 23 at 12. Moreover, only the testimony of Dr. Lynch

25  was excluded, unlike in *Holmes*, where all evidence of an entire theory of the defense was excluded.

26  Here, petitioner was not prevented from testifying himself or from presenting corroborating

27  testimony regarding his mental state. Ex. 23 at 9-10.

28

1

## III.

2
3
4

**THE STATE COURT'S DETERMINATION THAT THE TRIAL COURT'S FINAL RESPONSE TO THE JURY'S QUESTIONS DID NOT DIRECT A VERDICT OR CREATE AN IMPERMISSIBLE MANDATORY PRESUMPTION IS NOT CONTRARY TO SUPREME COURT AUTHORITY**

5        Petitioner contends that the trial court's final response to the jury's question regarding

6  willfulness directed a verdict as to willfulness and operated as a mandatory presumption in violation

7  of due process.[3/]  Pet. at 4, 51-62.  Since the trial court's response was consistent with the state's

8  definition of a violation of California Penal Code section 290, it did not violate due process.

9        "To obtain habeas relief following an erroneous response to a jury's request for

10  clarification, a petitioner must show that (1) the response was an incorrect or inaccurate application

11  of state law, (2) constitutional error resulted and (3) the error was not harmless."  *Richter v.*

12  *Hickman*, 521 F.3d 1222, 1237 (9th Cir. 2008).  "[C]onstitutional error occurs when (1) there is a

13  reasonable likelihood that the jury understood the trial judge's response to a request for clarification

14  as stating a certain rule of law, (2) that rule, as potentially understood by the jury, was incorrect or

15  inaccurate and (3) the rule, so understood, was unconstitutional as applied to the defendant."  *Id.*

16        During deliberations, the jury sent a note to the court asking, "Is knowing what act is

17  required to be performed sufficient to prove that the failure of the act was willful?"  Over defense

18  counsel's objection, the trial court responded:  "If a person knows what act is required to be

19  performed when he fails to perform such act, a failure to perform such act is willful." Ex. 1A at 260,

20  263;  Ex. 2H at 2-3.

21        The state court determined the trial court's response to the jury's question was a correct

22  application of state law, reasoning as follows:

23        According to defendant, "This response was error. It was a misunderstanding and distortion of *Garcia*'s holding that willfulness presumes
24        knowledge. It turned that holding around and erroneously informed the jury that knowledge entails willfulness." As defendant reasons, the trial court
25        was conflating the elements of knowledge and willfulness and in effect directing a verdict on willfulness.  In the abstract, defendant's argument might seem to

26

27  _____

28  3. Since petitioner contends the trial court's earlier responses were erroneous, but not error of federal constitutional dimension, respondent will not address those claims.  Pet. at 51-57.

1    have merit.  The actual language of *Garcia*, however, demonstrates that the trial
     court was not misreading the decision, but faithfully following it.  In *Garcia*,
2    our Supreme Court held:  "A violation of section 290 requires actual knowledge
     of the duty to register.  A jury may infer knowledge from notice, but notice
3    alone does not necessarily satisfy the willfulness requirement. [¶] . . . Although
     notice alone does not satisfy the willfulness requirement, a jury may infer from
4    proof of notice that the defendant did have actual knowledge, which *would*
     satisfy the requirement." (*People v. Garcia*, *supra*, 25 Cal.4th 744, 752.) This
5    is precisely the import of the trial court's final response to the jury.

6   Ex. 23 at 16-17.

7        As discussed above, under California law, the willfulness element of California Penal

8   Code section 290 is met when a defendant has actual knowledge of his duty to register but fails to

9   do so.  *Sorden*, 36 Cal.4th at 69;  *Barker*, 34 Cal.4th at 359 and 361, and *Garcia*, 25 Cal.4th at 752.

10  Accordingly, the trial court's response to the jury's question was a correct application of state law.

11                                           **IV.**

12       **THE STATE COURT'S DETERMINATION THAT THE CHALLENGED
         INSTRUCTIONS WERE NOT ERRONEOUS IS NOT CONTRARY TO
13       OR AN UNREASONABLE APPLICATION OF SUPREME COURT
         PRECEDENT**
14

15       Petitioner contends that the trial court gave three instructions which erroneously stated or

16  implied that he could be convicted even if he did not know he was required to register.  Pet. at 4, 63-

17  65.  The state court's determination that the challenged instructions did not misadvise the jury since

18  the jury was clearly instructed that it must find petitioner had actual knowledge of his duty to

19  register is not contrary to or an unreasonable application of Supreme Court precedent.

20       Instructional errors under state law do not provide a basis for habeas relief.  *Estelle v.*

21  *McGuire*, 502 U.S. 71-72.  Federal constitutional error occurs only when there is a reasonable

22  likelihood the jury misapplied the instructions in a way that violates the Constitution.  *Id.* at 72.  An

23  instruction is not judged in artificial isolation, but "must be considered in the context of the

24  instructions as a whole and the trial record."  *Id.*

25       The trial court instructed the jury on the elements of California Penal Code section 290

26  as follows:

27       Every person who's required to register as a sex offender based on a felony
         conviction shall, for the rest of his life, register with the chief of police in the
28       city in which he resides within five working days of coming into that city.  A

Memorandum of Points and Authorities in Support of Answer - *Rider v. Curry, Warden* - C 08-0235 RMW (PR)

registrant is also required to register annually within five days of his birthday. A willful failure to register is a violation of Penal Code Section 290(g)(2).

[¶]

In order to prove the crime of violating Section 290(g)(2) of the Penal Code, each of the following elements must be proved: one, the defendant was required to register as a sex offender pursuant to Penal Code Section 290 due to a prior felony conviction for a sexual offense; two, the defendant had actual knowledge of his duty to register; three, defendant was residing in the City of San Mateo; four, defendant willfully failed to register with the San Mateo Police Department within five working days of moving into San Mateo, or willfully failed to register with the San Mateo Police Department within five working days of his birthday.

Ex. 2G at 225-27.

The trial court instructed the jury with CALJIC No. 1.20 as follows: "The word willful, when applied to the intent with which an act is done or omitted, means with a purpose or willingness to commit the act or to make the omission in question. The word 'willfully' doesn't require any intent to violate the law or to injure another or to acquire any advantage." Exs. 1A at 197 & 2G at 219. The trial court instructed with CALJIC No. 1.21 as follows: "The word 'knowing' means with knowledge of the existence of the facts in question. [¶] Knowledge of the unlawfulness of any act or omission is not required. A requirement of knowledge does not mean that the act must be done with any specific intent." Exs. 1A at 198 & 2G at 219.

The trial court instructed with CALJIC No. 3.30 as follows: "In the crime charged in this case, namely, a violation of Section 290(g)(2) of the Penal Code, there must exist a union or joint operation of act or conduct and general criminal intent. General intent doesn't require an intent to violate the law. When a person intentionally does that which the law declares to be a crime, he is acting with general criminal intent, even though he may not know that his act or conduct is unlawful." Ex. 1 A at 213 &2G at 225.

The state court determined that CALJIC Nos. 1.20, 1.21 and 3.30 were not erroneous, reasoning as follows:

The court in *Garcia* also concluded that the trial court there "erred in giving an 'ignorance of the law is no excuse' instruction (CALJIC No. 4.36), which on its face would allow the jury to convict defendant of failing to register even if he were unaware of his obligation to do so. . . . In the registration act context, the jury must find actual knowledge of the act's legal requirements."

1   (*People v. Garcia*, *supra*, 25 Cal.4th 744, 754.) The trial court did not give
    CALJIC No. 4.36, but it did give CALJIC No. 3.30, which told the jury that
2   "When a person intentionally does that which the law declares to be a crime, he
    is acting with general criminal intent, even though he may not know that his act
3   or conduct is unlawful." Defendant argues that CALJIC No. 3.30 is "a
    comparable 'ignorance of the law is no excuse' instruction" and subject to the
4   same infirmities as the *Garcia* court found in CALJIC No. 4.36.

5        The comparison between CALJIC Nos. 3.30 and 4.56 was first drawn by
    Division Two of this Court in *People v. Edgar* (2002) 104 Cal.App.4th 210.[4/]
6   The court determined that the use of No. 3.30 constituted reversible error, but
    this conclusion was made in a far different context—unlike here, but like
7   *Garcia*, the jury in *Edgar* had not been instructed that the defendant must be
    found to have had actual knowledge of the registration requirements. (*Id.* at pp.
8   218-219.)

9        Defendant appears to read *Garcia* as standing for the proposition that the
    giving of either CALJIC No. 4.56, or by analogy, CALJIC No. 3.30 is a
10  separate ground of instructional error. A close reading of *Garcia* and *Edgar*
    shows that both courts examined the issue of CALJIC No. 4.56 where the jury
11  received no instruction on the requirement of actual knowledge of the
    registration requirements. There, the use of CALJIC Nos. 4.56 and 3 .30 only
12  aggravated that omission. In this case, however, the jury was instructed on the
    actual knowledge requirement. The correctness of the instructions given the
13  jury is to be determined by examining all of the instructions, not just CALJIC
    No. 3.30. (E.g., *People v. Musselwhite* (1998) 17 Cal.4th 1216, 1248 and
14  decisions cited.) It is clear from the instruction enumerating the requirements
    for conviction under section 290 that the jury was unambiguously told that they
15  could not find defendant guilty unless they concluded that he "had actual
    knowledge of his duty to register." The use of CALJIC No. 3.30 therefore does
16  not qualify as reversible error.

17       Defendant also claims that giving CALJIC No. 1.20 defining "willfully"
    was, without modification, sufficiently erroneous as to require reversal. While
18  it is true that, as noted in *Garcia* and *Edgar*, CALJIC No. 1.20 does not, by
    itself, advise the jury of the actual knowledge requirement in failure-to-register
19  prosecutions, here the jury was expressly instructed that defendant could not be
    convicted unless the jury found that he "had actual knowledge of his duty to
20  register."

21  Ex. 23 at 13-14, footnote in original.

22       The state court's ruling was not contrary to or an unreasonable application of United States

23  Supreme Court authority. The instructions clearly required the jury to find that petitioner had actual

24  knowledge that he was required to register. The instruction that the term "willfully" does not require

25  an intent to violate the law does not contradict the actual knowledge requirement. A defendant need

26  not intend to violate the law to be guilty of violating California Penal Code section 290. Failure to

27

28       4. *Edgar* was discussed approvingly in *People v. Barker*, *supra*, 34 Cal.4th 345, 360-361.

1  register is not a specific intent crime.  *People v. Johnson*, 67 Cal.App.4th 67, 72 (1998).  The

2  instruction that knowledge of the unlawfulness of the act or omission is not required does not

3  contradict the requirement that petitioner had actual knowledge of his duty to register.  Since actual

4  knowledge of the duty to register does not require knowledge of the unlawfulness of failing to

5  register or an intent to violate the law, it is not reasonably likely that the jury misapplied the

6  challenged instructions.  Accordingly, the state court's ruling was not contrary to or an unreasonable

7  application of Supreme Court authority.

8  **V.**

9  **THE STATE COURT'S RULING THAT PETITIONER'S SENTENCE**
   **DOES NOT CONSTITUTE CRUEL AND UNUSUAL PUNISHMENT IS**
10 **NOT AN UNREASONABLE APPLICATION OF SUPREME COURT**
   **AUTHORITY**

11

12      Petitioner contends his sentence is cruel and unusual.  Pet. at 4-5, 66-68.  The California

13 Court of Appeal determination that petitioner's sentence does not constitute cruel and unusual

14 punishment is not contrary to, or an unreasonable application of, United States Supreme Court

15 authority.

16      In *Lockyer v. Andrade*, 538 U.S. 63 (2003), the United States Supreme Court considered

17 whether the California Court of Appeal's decision affirming the defendant's sentence of 50 years

18 to life in prison for two counts of petty theft with a prior conviction was contrary to, or an

19 unreasonable application of, clearly established United States Supreme Court authority.  The

20 defendant had stolen $153.44 worth of videotapes from two stores.  *Id.* at 66.  He had three prior

21 strikes for residential first-degree burglary.  *Id.* at 68.  The Court acknowledged a lack of clearly

22 established Supreme Court authority "in determining whether a particular sentence for a term of

23 years can violate the Eighth Amendment."  *Id.* at 72.  The only relevant, clearly established Supreme

24 Court authority is the "gross disproportionality principle, the precise contours of which are unclear,

25 applicable only in the 'exceedingly rare' and 'extreme' case."  *Id.* at 73.  The Court held that it was

26 not contrary to clearly established law for the California Court of Appeal to rely on *Rummel v.*

27 *Estelle*, 445 U.S. 263 (1980) "in deciding whether a sentence is grossly disproportinate."  *Id.*  The

28 Court concluded that it was not unreasonable to affirm the defendant's sentence of two consecutive

1  25 years to life terms for the two petty theft convictions with three prior strike convictions. *Id.* at

2  77.

3           In *Rummel*, the defendant was sentenced under a recidivist statute to life in prison with

4  the possibility of parole upon his third theft-related felony conviction. The United States Supreme

5  Court, in upholding the constitutionality of the statute, stated: "[The] primary goals [of a recidivist

6  statute] are to deter repeat offenders and, at some point in the life of one who repeatedly commits

7  criminal offenses serious enough to be punished as felonies, to segregate that person from the rest

8  of society for an extended period of time. This segregation and its duration are based not merely

9  on that person's most recent offense but also on the propensities he has demonstrated over a period

10  of time during which he has been convicted of and sentenced for other crimes. Like the line dividing

11  felony theft from petty larceny, the point at which a recidivist will be deemed to have demonstrated

12  the necessary propensities and the amount of time that the recidivist will be isolated from society

13  are matters largely within the discretion of the punishing jurisdiction." *Id.* at 284-285. The Court

14  upheld the constitutionality of the statute, characterizing it as "nothing more than a societal decision

15  that when such a person commits yet another felony, he should be subjected to the admittedly

16  serious penalty of incarceration for life, subject only to the State's judgment as to whether to grant

17  him parole." *Id.* at 278.

18           In *Ewing v. California*, 538 U.S. 11, 18-19 (2003) (plur. opn. of O'Connor, J.), the

19  defendant was convicted of felony grand theft for taking three golf clubs worth $399 each. His

20  criminal history included four prior strike convictions. *Id.* at 19. He was sentenced under

21  California's three strikes law to 25 years to life. *Id.* at 20. "When the California Legislature enacted

22  the three strikes law, it made a judgment that protecting the public safety requires incapacitating

23  criminals who have already been convicted of at least one serious or violent crime. Nothing in the

24  Eighth Amendment prohibits California from making that choice." *Id.* at 25. The Court determined

25  that the sentence was not "grossly disproportionate" in light of his offense and recidivism, and

26  therefore did not constitute cruel and unusual punishment. *Id.* at 28-31.

27           The California Court of Appeal's decision affirming petitioner's sentence was not an

28  unreasonable application of clearly established United States Supreme Court authority. The state

1  court rejected petitioner's contentions as follows:

2      Since defendant filed his opening brief, the United States Supreme Court has
       found that California's three strikes law does not violate the Eighth
3      Amendment, even when the latest offense is for a nonviolent, nonserious crime
       such as petty theft. (*Lockyer v. Andrade* (2003) 538 U.S. 63, *Ewing v.*
4      *California* (2003) 538 U.S. 11.)  Defendant makes much of the fact that a
       violation of section 290 was a misdemeanor until 1995, when the Legislature
5      elevated it to a felony. Section 290, and laws like it, have been found not to
       violate ex post facto prohibitions. (*Wright v. Superior Court* (1997) 15 Cal.4th
6      521, 531-533; see *Smith v. Doe* (2003) 538 U.S. 84.)  "'The purpose of section
       290 is to assure that persons convicted of the crimes enumerated therein shall
7      be readily available for police surveillance at all times because the Legislature
       deemed them likely to commit similar offenses in the future. [Citation.]'"
8      (*Wright v. Superior Court*, *supra*, at p. 527; accord, *McKune v. Lile* (2002) 536
       U.S. 24, 32-34.)  A violation of section 290 thus entails a substantial risk of
9      future harm.  Together with defendant's history of other serious and violent
       crimes, his sentence does not qualify as grossly disproportionate.

10

11 Ex. 23 at 17.

12      According to the probation report, petitioner's first criminal conviction as an adult was

13 for battery in 1976 when he was 18 years old.  The next year, he was convicted of taking a car and

14 of brandishing a firearm in separate incidents.  In 1978, petitioner pled guilty to three counts of

15 robbery, based on seven separate purse snatching incidents involving elderly female victims.  He

16 knocked three of his victims to the ground.  While on parole in 1981, petitioner was convicted of

17 grand theft.  In 1983, petitioner lured his 15-year-old cousin into his car under the false pretense that

18 he needed to buy a gift for his mother.  He drove to a secluded area, struck her several times, threw

19 her out of the car into a ditch and cut off her shirt with a knife.  He pulled off her pants and his own

20 pants, and, while holding a knife, tried to force her to orally copulate him.  A witness drove up.

21 Petitioner tried to cut the victim's throat with a knife, but she deflected it.  Petitioner tried to run

22 down the witness with his car.  He was convicted of forcible oral copulation of a minor and

23 attempted voluntary manslaughter.  He was paroled in 1994 and violated parole several times.  (Ex.

24 1B at 5-6;  Ex. 2G at 263-266.)

25      Petitioner's lengthy criminal history, which includes numerous violent crimes,

26 demonstrates his unwillingness to obey the law.  Incapacitating him is necessary to protect the

27 public.  His sentence of 25 years to life for his present felony offense is not "grossly

28 disproportionate" to his current and prior offenses.  Accordingly, the state court's determination that

Memorandum of Points and Authorities in Support of Answer - *Rider v. Curry, Warden* - C 08-0235 RMW (PR)

19

1  petitioner's sentence does not constitute cruel and unusual punishment is not an unreasonable

2  application of United States Supreme Court authority.

3

4                                    **CONCLUSION**

5          Accordingly, respondent respectfully requests this Court to deny the petition for writ of

6  habeas corpus.

7          Dated:  August 15, 2008

8                                Respectfully submitted,

9                                EDMUND G. BROWN JR.
                                 Attorney General of the State of California

10                               DANE R. GILLETTE
                                 Chief Assistant Attorney General

11
                                 GERALD A. ENGLER
12                               Senior Assistant Attorney General

                                 PEGGY S. RUFFRA
13                               Supervising Deputy Attorney General

14

15                               /s/ Jill M. Thayer
                                 JILL M. THAYER
16                               Deputy Attorney General

17                               Attorneys for Respondent

18    20125795.wpd
      SF2008401602

19

20

21

22

23

24

25

26

27

28